## McLEOD LUMBER CO. v. WESTERN RED-WOOD CO.

(Circuit Court of Appeals, Ninth Circuit. November 23, 1925. Rehearing Denied January 4, 1926.)

No. 4558.

**1. Contracts ⟂322(2)—Contract by president for purchase of timber for company held admissible to show compliance with requirement of contract.**

In action by corporation owning mill against lumber company for breach of contract to advance money for operations and to sell entire product of mill, evidence of agreement between plaintiff's president and owner of timber lands for purchase of same in behalf of plaintiff held admissible to show compliance by plaintiff with requirement that it should procure timber.

**2. Evidence ⟂244(7)—Admissions against interest by agent of defendant corporation held admissible.**

Evidence that one assisting plaintiff's representative in attempting to obtain selling agent, in lieu of defendant at defendant's request, stated that plaintiff had fully complied with its contract, held admissible as admission made within the scope of his authority and in the course of his employment.

**3. Appeal and error ⟂1050(4)—Admission of impeaching testimony without technically sufficient foundation held not prejudicial.**

Admission of testimony competent to impeach a witness, if technically erroneous because foundation was somewhat informal, held not prejudicial.

**4. Contracts ⟂312(1)—Tender of note not indorsed as required by contract or use made of new note held not breach of contract.**

Where contract between mill owner and defendant required latter to act as selling agent and advance money on note signed by plaintiff and indorsed by three individuals, mill owner held not to have broken contract by tendering note not indorsed by all named individuals or by use made of new note, prepared and indorsed as required by the contract.

**5. Damages ⟂218—In action for breach of contract, instruction that damages for breach of covenant to advance money could not be recovered held properly refused.**

In action by mill owner for breach of defendant's contract to finance operations and act as selling agent, refusal of an instruction that no damage could be allowed for failure to advance money as agreed held proper; such agreement being only one of numerous covenants.

**6. New trial ⟂6—Motion addressed to sound discretion of court.**

A motion for new trial in action for breach of contract is addressed to the sound judicial discretion of trial court.

On Writ of Error to the District Court of the United States for the Southern Division of the Northern District of California, Second Division; John S. Partridge, Judge.

Action by the Western Redwood Company against the McLeod Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Redman & Alexander, of San Francisco, Cal., for plaintiff in error.

John L. McNab, Byron Coleman, and Norman A. Eisner, all of San Francisco, Cal., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This was an action to recover damages for breach of a written contract between the Western Redwood Company, as first party, and McLeod Lumber Company, as second party. The contract provided, among other things, that the first party should, without delay, place its mill at Needle Rock, Cal., in readiness to operate, and should procure and cut redwood timber and sell the entire redwood output of the mill through the second party, and that, if the present mill failed to turn out at least 20,000 feet per day, after two weeks' operation, the first party should, as soon as possible, bring the mill up to that minimum capacity by whatever means necessary. The second party agreed: To sell the entire redwood output of the mill at the highest prices obtainable; to advance to the first party, when the mill actually started operation, the sum of $5,000 in exchange for a note of the first party, bearing 7 per cent. interest, payable 6 months after date, and indorsed by George F. Braun, Calvin Stewart, and John Bartram; to advance the sum of $20 per thousand as each 100,000 feet of lumber was sawed and delivered in

the yard at the mill; to advance 75 per cent. of the value of the lumber as the same was loaded on boats, after deducting the $20 per thousand theretofore advanced; and to pay the difference between the actual selling price and the advances theretofore made upon the sale and delivery of the lumber to third parties, less a commission of 12½ per cent. Other provisions of the contract are not deemed material at this time. The complaint filed by the Western Redwood Company, as plaintiff, against the McLeod Lumber Company, as defendant, alleged due performance of the conditions of the contract on the part of the plaintiff; the failure and refusal of the defendant to advance the $5,000 as agreed; that the defendant, on or about August 1, 1923, removed its offices from San Francisco, Cal., and made no preparations to receive the lumber manufactured by the plaintiff or to act in any way as selling agent for the plaintiff; that, on the contrary, the defendant failed and refused to act as such selling agent; refused to make any arrangements to take care of the output of the mill or to dispose of the lumber manufactured therein, and refused to perform the conditions of the contract on its part to be performed.

Upon the trial, the jury returned a verdict in favor of the plaintiff, and the judgment on the verdict has been brought here for review by writ of error. Error is assigned in the admission of testimony during the trial, in the charge of the court and in the refusal to charge as requested, and in the denial of a motion for new trial.

[1-3] The defendant in error offered in evidence an agreement entered into between the Coast National Bank of Ft. Bragg, as vendor, and Calvin Stewart, Sr., as vendee, for the sale of certain timber lands in Mendocino county, Cal. An objection to the admission of this contract was overruled. It appears from the testimony that Stewart, the vendee named in the contract, was president of the Western Redwood Company, and that he obtained the contract for the use and benefit of that company. The contract tended to show that the defendant in error had complied with that part of its agreement requiring it to procure timber, and was clearly competent and material for that purpose. One Braun, a witness for the defendant in error, was asked whether one Blanchard had not made statements to different parties to the effect that the defendant in error had fully complied with the terms and conditions of its contract. The witness answered in the affirmative,

and the admission of this testimony is assigned as error. At the time the statements were made Blanchard was assisting Braun in an effort to obtain another selling agent for the Western Redwood Company in the place of the McLeod Lumber Company, at the request of the latter, and the statements were therefore made in the course of his employment and within the scope of his authority. The same witness was further asked whether one Matteson had told him, in the month of August, that he had an efficient mill. This testimony was competent for the purpose of impeaching testimony theretofore given by Matteson, and, while the foundation for the impeachment was somewhat informal, we do not think that the ruling was prejudicial, if technically erroneous.

The principal contention of the plaintiff in error seems to be that the court erred in refusing to direct a verdict in its favor. The court charged the jury in plain and concise language that it was incumbent on the plaintiff to establish the following facts by a preponderance of the testimony: First, that there was a contract as alleged; second, that the plaintiff complied with the terms of the contract; third, that the defendant breached the contract; fourth, that the plaintiff suffered damages; and, fifth, that the damages resulted from the breach. This instruction embodied a correct statement of the law, and was fully warranted by the testimony.

[4] Much is said in the record concerning the note of $5,000 mentioned in the contract in suit. The facts in relation to that matter are not in dispute. It clearly appears from the testimony that the plaintiff in error desired to be released from the burdens imposed by the contract, and to that end gave notice of cancellation on August 6, 1923. The notice of cancellation was later recalled, and this was followed by negotiations for a modification of the contract, but without avail. Finally the parties met at San Francisco for the purpose of closing the note transaction. The plaintiff in error was there represented by one Smith, the defendant in error by Braun, and the vendor in the timber contract was likewise represented, as the proceeds of the note were to go to the bank from which the timber land was purchased. Braun had in his possession a promissory note for $5,000, executed by the defendant in error, and indorsed by Stewart and himself, but not by Bartram, as required by the contract. Smith took the note, raising no objection on the ground that

it was not indorsed by Bartram, and attempted to discount it at different banks in San Francisco. Later he reported to Braun that he was unable to discount the note because it did not bear the indorsement of the plaintiff in error, and he was without authority to indorse the note in its behalf. He then produced a blank form of note bearing the indorsement of the plaintiff in error, and suggested that Braun execute this note in behalf of the defendant in error. Braun informed him that the note could only be executed by the president of the company, under its by-laws, and the note was thereupon sent to Stewart, the president, for execution and for his indorsement, and was later sent to Bartram, at Fresno, to procure his indorsement. The note was finally returned to Braun, executed by all parties, as required by the contract. In the meantime, Smith was injured in an accident and was confined in a hospital at Eureka, unable to attend to business. A question then arose as to what should be done with the note. Braun took the matter up with one Schultz, representing the vendor in the contract for the sale of the timber, and as a result the note was sent to Schultz, with instructions to hold it as additional collateral; the letter of transmittal stating that, owing to the condition of Smith, the matter could not be closed for two or three weeks, and that, when the money was paid over, it would be forwarded to the bank and the note could then be returned. The money was not paid, Schultz made no use of the note, and it was finally returned to Braun. Under the foregoing facts, which are not in dispute, there is no merit in the contentions that the defendant in error breached the contract by failing to tender a note indorsed by Bartram, that the use made of the note was a waiver of the right to demand the payment of the $5,000, or was otherwise a defense to the action.

[5, 6] Nor was there error in the refusal of the court to charge that no damages could be allowed for failure to advance the $5,000. The agreement to advance this amount was only one of numerous covenants contained in the contract to be kept and performed by the plaintiff in error, and the defendant in error was entitled to recover such damages as resulted directly and proximately from the breaches complained of. The measure of damages was stated by the court in its charge to the jury, and to that part of the charge no exceptions were taken. The motion for a new trial was addressed to the sound discretion of the trial court, and no abuse of discretion in the denial of the motion is shown. On the contrary, the showing was weak in two aspects: First, as to the character of the newly discovered evidence; and, second, as to the diligence used to obtain the evidence on the former trial, or on a continuance thereof.

We find no error in the record, and the judgment is therefore affirmed.